

FILED

March 28, 2018

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

8:33 A.M.

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **STEVEN GAGYI,** | ) | **Docket No. 2017-07-0051** |
| Employee, | ) | |
| v. | ) | |
| **JOHNSON CONTROLS,** | ) | **State File No. 29750-2015** |
| Employer, | ) | |
| And | ) | |
| **UNDERWRITERS SAFETY & CLAIMS,** | ) | **Judge Amber E. Luttrell** |
| Carrier. | ) | |

## COMPENSATION HEARING ORDER

This matter came before the Court on February 28, 2018, for a Compensation Hearing. The parties stipulated Mr. Gagyi sustained a compensable work injury to his right wrist and presented competing impairment opinions from Dr. Michael Dolan, the authorized treating physician, and Dr. Samuel Chung, Mr. Gagyi's evaluating physician. The legal issue is whether Mr. Gagyi is entitled to permanent partial disability benefits. To resolve this issue, the Court must determine whether Mr. Gagyi successfully rebutted the presumption of correctness afforded Dr. Dolan's zero-percent impairment opinion by a preponderance of the evidence. For the reasons set forth below, the Court holds he did.

### History of Claim

Mr. Gagyi worked for Johnson Controls as a night tooling repairman. On April 15, 2015, Mr. Gagyi changed a "punch" on a press machine.[1] He testified the release mechanism was broken; therefore, he had to use needle-nose pliers to pull the punch. He hit the "pinky side" of his right hand and wrist on a metal cradle with significant force. The parties stipulated Mr. Gagyi timely reported his injury, and Johnson Controls authorized medical treatment with Dr. Michael Dolan, whom Mr. Gagyi selected from a panel of orthopedic physicians. Mr. Gagyi later saw Dr. Samuel Chung for an

---

[1] Mr. Gagyi testified a "punch" is located inside a hydraulic press and pierces holes into a pipe that is two inches in diameter. Eventually, a punch wears out after "so many hits."

1

independent medical evaluation. The parties took the depositions of Dr. Dolan and Dr. Chung and introduced the following medical proof.

*Treatment and Physicians' Testimony*

### a. Dr. Dolan

Mr. Gagyi first saw Dr. Dolan four months after his work injury. Dr. Dolan took a history from Mr. Gagyi and noted, "he slammed the ulnar side of his wrist forcefully with it in full supination which means his palm was facing up. He hit the wrist on the pinkie side which is where the TFCC is located."[2] Dr. Dolan's exam indicated tenderness at the TFCC location. He could not order an MRI due to Mr. Gagyi's recent placement of a pacemaker and stent for an unrelated heart condition. Dr. Dolan diagnosed a TFCC tear and provided conservative treatment consisting of a long-arm cast for one month followed by a removable fracture brace.

Mr. Gagyi's wrist remained sore at follow-up visits, and his arm muscles began to atrophy from lack of use due to him protecting his arm. Dr. Dolan testified this indicated Mr. Gagyi "did want to get better and was doing as instructed." He stated Mr. Gagyi's wrist was "stiff and weak." He ordered physical therapy; however, Mr. Gagyi's therapy was limited because the workers' compensation carrier denied it. Dr. Dolan noted in December 2015,

> Well, our therapy got denied again. We have had a long discussion about options and we are just going to turn it in. There is really nothing else to do. Unfortunately, I have run the limit of what I can do without therapy; there is not anything else. There is no surgical option . . . On exam, the wrist is the exact same. He is still hurting in all the same spots. There is just not anything else I can do about it. We are going to get him rated and we are going to make him [at] MMI.

Dr. Dolan testified Mr. Gagyi was frustrated that the workers' compensation carrier declined his therapy. He stated, "[t]here really wasn't anything left for me to do because . . . he needed therapy." With no other treatment options, Dr. Dolan released Mr. Gagyi at maximum medical improvement (MMI) on December 10, 2015, and referred him to a hand therapist at TriVista Rehab for an impairment-rating evaluation. He testified,

> I have my certified hand therapists . . . do the initial part of the rating and get the book out, and they have a computer program they follow, and they

---

[2] Dr. Dolan testified TFCC stands for triangular fibrocartilage complex. He explained the TFCC "holds the end of the ulna to the end of the radius which allows the radius to spin around the ulna in pronation and supination at the distal radial ulnar joints. The TFCC also has ligamentous structures which help stabilize the wrist. It also has a portion that holds a tendon called the extensor carpio ulnaris in place."

2

make a very detailed and notated recommendation which has every part listed in the Guides based on what they measure objectively. I then take that form and do a formal impairment rating.

Dr. Dolan reviewed the therapist's recommendation and the AMA Guides and concluded, "[Mr. Gagyi] had no impairment . . . .He had limited amount of pain. Although it was limiting what he could do at work, his Dash score was not tremendously high and his range of motion was normal."[3]

Dr. Dolan referred to the therapist's impairment rating recommendation form concerning how he calculated the zero-percent impairment under the Sixth Edition of the AMA Guides. The therapist's report indicated she evaluated Mr. Gagyi using both the diagnosis-based impairment method and the range-of-motion method. For the diagnosis-based method, the therapist used Table 15-3, page 395, for a diagnosis of wrist pain and used Class 1, which requires a finding of residual symptoms without consistent objective findings. After applying the grade modifiers, the result was a Class 1, Grade B, zero-percent impairment. Dr. Dolan did not assign any permanent restrictions.

Following MMI, Mr. Gagyi returned to Dr. Dolan on four more occasions for complaints of continued right wrist pain, weakness, and tenderness. Dr. Dolan testified, "it was essentially the same initial exam he had." He stated Mr. Gagyi also complained of decreased grip strength, but he did not measure his grip strength. Since Mr. Gagyi could not undergo an MRI, Dr. Dolan ordered a CT scan, which indicated a widened scapholunate ligament tear. Dr. Dolan concluded the ligament tear pre-existed the injury based on earlier scans and was unrelated to Mr. Gagyi's area of pain and symptoms. Dr. Dolan maintained his diagnosis of a TFCC tear and discussed with Mr. Gagyi his options of casting, bracing, or surgery. Mr. Gagyi considered surgery but declined because he was working for a new employer and could not take off work to recover following the surgery. Dr. Dolan provided Mr. Gagyi a cortisone injection, which provided minimal relief.

Dr. Dolan testified on direct exam that his additional treatment of Mr. Gagyi did not alter his opinions regarding the MMI date or impairment. On cross-examination, Dr. Dolan testified he wanted to send Mr. Gagyi for another impairment rating evaluation due to his additional treatment, but he stated, "that did not happen." He testified, "I think we asked about it and I think it got rejected if memory serves me because everything we ordered for him, the work comp insurance carrier rejected."

Although he assigned a zero-percent rating, Dr. Dolan testified Mr. Gagyi sustained a permanent injury. He stated, "TFCCs are one of these things that they hurt

---

[3] Both Dr. Dolan and Dr. Chung testified their medical opinions were within a reasonable degree of medical certainty.

and they come back and go away and they hurt and come back . . . So they never really go away, they just kind of go into remission." When not in remission, Dr. Dolan testified he expected Mr. Gagyi to have symptoms of "pain, weakness in grip, pain with palm up or supination, just the sides of the wrist hurts . . . Their wrist hurts when they use it." Concerning ratings for TFCC injuries in the AMA Guides, Dr. Dolan commented,

> TFCC tears are difficult to rate, and they are so subjective that the ratings are often very low . . . when they are as debilitating as things that are more objective like tendon injuries, carpal tunnel syndrome, things that are rated much more commonly . . . it is not uncommon at all for someone to have a fingertip injury that has a higher rating than someone with a TFCC injury.

He concluded, "I think the ratings are not very good to be quite honest with you. I don't think the AMA Guides does a good job at all in hand injuries." Dr. Dolan testified that he also treated Mr. Gagyi for a previous, unrelated injury and knew him extensively as a patient. He stated Mr. Gagyi was not a symptom-magnifier or malingerer. He believed Mr. Gagyi "presented 100% validly" in his treatment.

### b. Dr. Chung

Mr. Gagyi saw Dr. Chung for an independent medical evaluation on two occasions. At his first evaluation, he gave a history of his injury and treatment to date and complained of continued pain and weakness with gripping and twisting of his wrist. On exam, Dr. Chung found his range of motion was "essentially within normal limits." He found a slight deficit in his ulnar deviation of ten degrees. On grip-strength testing, Dr. Chung found four-plus over five strength, which he testified revealed Mr. Gagyi's right grip was slightly weaker than his left hand.

Dr. Chung used Table 15-3, page 396 of the AMA Guides, Sixth Edition, to calculate Mr. Gagyi's permanent impairment rating. Dr. Chung selected the diagnosis of TFCC tear and used Class 1 because of Mr. Gagyi's residual findings. He applied a functional history grade modifier of one, secondary to Mr. Gagyi's wrist pain with gripping and ulnar deviation with work activities. He applied a physical exam grade modifier of two, secondary to his finding of moderate tenderness in the right ulnar aspect of the wrist to palpation in the area of the extensor carpi ulnaris muscle. Lastly, Dr. Chung did not apply the clinical study grade modifier because no MRI was performed. He calculated an overall net adjustment of plus one, resulting in a Class 1, Grade D rating of nine percent to the right upper extremity, which converted to a five-percent anatomic rating to the body as a whole.[4]

---

[4] Dr. Chung noted that Mr. Gagyi's impairment rating would be the same under the Guides even if he had not applied the grade modifier, since the default rating for Class 1 is five percent to the body.

4

Following additional treatment with Dr. Dolan, Mr. Gagyi returned to Dr. Chung for a second evaluation. Mr. Gagyi demonstrated slightly weaker grip strength and ten degrees less ulnar deviation on range-of-motion testing. Because of the evaluation and Mr. Gagyi's additional functional difficulties, Dr. Chung adjusted the functional history grade modifier, which increased Mr. Gagyi's impairment rating to a six-percent anatomic rating to the body as a whole.

Dr. Chung disagreed with the basis for Dr. Dolan's zero-percent impairment opinion. He stated that the therapist who calculated Mr. Gagyi's impairment rating did not use Dr. Dolan's TFCC diagnosis when assigning the diagnosis-based impairment rating under Table 15-3, page 396. Instead, the report indicated the therapist calculated a rating using the diagnosis of "wrist pain" on page 395. Dr. Chung stated, "If you do not use that particular section, then . . . you are going to completely mislead the diagnosis section of class as well as the overall impairment rating base."

*Hearing Testimony*

Mr. Gagyi continues to experience pain and symptoms when he "articulates his hand or wrist" or he feels any pressure on his wrist. He performs hand-intensive work and is not allowed to wear a brace around machinery. Mr. Gagyi testified he cannot "tighten up on a lay" or "crank a handle" without hand and wrist symptoms. He continues to experience hand weakness and uses his left hand more now. He modified his current job duties, so that he can use both hands. He does not attempt any activity requiring one-handed pulling because of his grip. He also testified to difficulties performing his outdoor hobbies of hunting and fishing. He further stated he cannot throw a ball overhead to his sons. He cannot work on cars anymore because of his grip.

Johnson Controls laid Mr. Gagyi off the day after his injury. Since his layoff, he worked briefly for another employer until the contract expired and he was laid off. He drew unemployment benefits for twenty-seven weeks and then accepted employment at Butcher Boy Machines, where he works as a machine operator.

The parties stipulated that, should the Court find Mr. Gagyi sustained permanent impairment and is entitled to permanent partial disability benefits, he qualifies for an increased award using the multipliers of 1.35 for no return to work, 1.2 for his age, and 1.3 based on the unemployment rate in his county of employment.

**Findings of Fact and Conclusions of Law**

"At a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6)

(2016).

The parties stipulated that Mr. Gagyi's injury arose primarily out of and in the course and scope of his employment. Therefore, the only issue the Court must address is whether Mr. Gagyi sustained any permanent impairment, which would entitle him to permanent partial disability benefits. Further, as this is a compensable claim, the Court holds Mr. Gagyi is entitled to reasonably necessary future medical treatment recommended by his authorized treating physician, Dr. Dolan, under Tennessee Code Annotated section 50-6-204.

*Permanent Impairment*

The issue before the Court is whether Mr. Gagyi sustained any permanent impairment, which would entitle him to permanent partial disability benefits. To resolve this issue, the Court considers the physicians' testimony regarding the competing impairment opinions, as well as the lay proof, to analyze whether Mr. Gagyi successfully rebutted the statutory presumption afforded Dr. Dolan's zero-percent rating by a preponderance of the evidence. For the following reasons, the Court finds he did.

The Court first notes Drs. Dolan and Chung both assessed Mr. Gagyi's impairment rating based on the diagnosis-based method using Table 15-3 in the AMA Guides. However, the physicians selected different diagnoses for purposes of determining the impairment rating. Dr. Dolan, with the assistance of his therapist who prepared the impairment evaluation, selected the diagnosis of "wrist pain" on page 395 of the Guides. Dr. Chung, relying on Dr. Dolan's treatment diagnosis of TFCC tear, selected the diagnosis of TFCC tear on page 396 to calculate Mr. Gagyi's impairment. Significantly, both Dr. Dolan and Dr. Chung assigned Class 1 impairment based on Mr. Gagyi's residual findings. Thus, the differing diagnoses account for the difference in ratings. Unlike Class 1 for a diagnosis of wrist pain, Class 1 under TFCC tear does not provide a possible zero-percent impairment. Thus, had Dr. Dolan used his treatment diagnosis of TFCC tear for the diagnosis for calculating impairment in Table 15-3 Class 1, Mr. Gagyi would have qualified for an impairment rating.

In his deposition, Dr. Dolan testified that his rating complied with the directives of the AMA Guides, but he did not explain why he used the diagnosis of wrist pain instead of TFCC tear to calculate Mr. Gagyi's impairment. He testified Mr. Gagyi sustained a permanent injury that is as debilitating as conditions that carry higher ratings, but he assigned no impairment. Dr. Chung, on the other hand, testified he calculated his rating based on Dr. Dolan's TFCC diagnosis under the Guides' directives. He explained his disagreement with Dr. Dolan's methodology by stating, "If you do not use that particular section, then . . . you are going to completely mislead the diagnosis section of class as well as the overall impairment rating base."

Further, Dr. Dolan's testimony that he requested to send Mr. Gagyi for a second impairment-rating evaluation following his additional treatment, which Johnson Controls denied, supports the Court's finding. The fact that Dr. Dolan requested a second impairment-rating evaluation, combined with his testimony that Mr. Gagyi sustained a permanent injury, seems inconsistent with his reliance on his initial impairment calculation.

In support of its argument that Mr. Gagyi sustained no impairment, Johnson Controls argued Dr. Chung based his rating solely on pain. The Court disagrees. Dr. Chung testified he calculated his rating based on Mr. Gagyi's clinical diagnosis of a TFCC injury with residual findings, his functional history of difficulty gripping and ulnar deviation with work activities, and his physical-exam findings at the ulnar aspect of the wrist. The Court finds Dr. Chung's findings were similar to Dr. Dolan's own exam findings throughout his treatment and Mr. Gagyi's symptoms of weakness with grip.

Significantly, the Court finds Mr. Gagyi was a straightforward, credible witness at trial. He appeared calm, at ease, self-assured, steady, confident, forthcoming, reasonable, and honest. These characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Drs. Dolan and Chung also found Mr. Gagyi credible in his report of symptoms. He credibly testified he experiences difficulty when he "articulates his hand or wrist" or he feels any pressure on his wrist. Mr. Gagyi testified he cannot "tighten up on a lay" or "crank a handle" without hand and wrist symptoms. He continues to experience hand weakness and uses his left hand more now. He modified his current job duties, so that he can use both hands. He does not attempt any activity requiring one-handed pulling because of his grip.

"When faced with conflicting medical testimony, the Court must use its discretion in accepting one expert opinion over another and, in so doing, may consider which opinion contains the more probable explanation." *Sanker v. Nacarato Trucks, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). Further, and of particular importance here, Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.,* 812 S.W.2d 278, 283 (Tenn. 1991). Here, based on Mr. Gagyi's credible testimony combined with the medical proof, the Court finds Dr. Chung offered the more probable and persuasive explanation and holds Mr. Gagyi sustained permanent impairment for his TFCC injury.

Accordingly, upon thorough consideration of the preponderance of the evidence, the Court holds Mr. Gagyi rebutted the presumption of correctness of Dr. Dolan's impairment opinion and sets the anatomic rating at six percent to the whole person. The Workers' Compensation Law provides that permanent partial disability is paid at sixty-six and two-thirds percent of the injured employee's average weekly wage for the period

7

of compensation as determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 50-6-207(3)(A). Mr. Gagyi's original award is six percent to the body as a whole or twenty-seven weeks of benefits. At his stipulated compensation rate of $687.50, his original award is $18,562.50. The parties stipulated that Mr. Gagyi qualifies for increased benefits under section 50-6-207(3)(B); thus, the parties agreed that Mr. Gagyi's award shall be increased by multiplying the original award by factors of 1.35, 1.2 and 1.3. After applying these multiplier factors, the Court finds Mr. Gagyi sustained permanent partial disability of 12.636% percent to the body or a period of 56.862 weeks. At his compensation rate, the Court concludes Ms. Gagyi is entitled to permanent partial disability benefits totaling $39,092.63.

The Court further holds Mr. Gagyi's attorney is entitled to a reasonable attorney's fee. The statute provides attorney's fees shall be deemed reasonable if the fee "does not exceed twenty percent (20%) of the award to the injury worker." Thus, the Court holds counsel for Mr. Gagyi is entitled to a twenty-percent fee.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Gagyi shall recover permanent partial disability benefits totaling $39,092.63.

2. Mr. Gagyi shall receive future medical benefits under the statute.

3. Mr. Gagyi's attorney is awarded a twenty-percent attorney's fee to be paid from his award.

4. Costs of $150.00 are assessed against Johnson Controls under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016), to be paid within five days of entry of this order. It shall also file Form SD-1 within that timeframe.

5. Absent an appeal of this order, it shall become final thirty days after issuance.

**ENTERED this the 28th day of March, 2018.**

_____
**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

8

**APPENDIX**

<u>Exhibits:</u>
1. Dr. Chung's deposition
2. Dr. Dolan's deposition
3. Medical Records (collective)
4. First Report of Injury
5. Panel

<u>Technical record:</u>
1. Petition for Benefit Determination (PBD)
2. Dispute Certification Notice (DCN)
3. Request for Initial Hearing
4. Scheduling Order
5. Post-Discovery PBD
6. Post-Discovery DCN
7. Employee's Motion to Continue Compensation Hearing
8. Order Continuing Compensation Hearing
9. Amended Scheduling Order
10. Employer's Witness and Exhibit List
11. Employee's Witness and Exhibit List
12. Employee's Motion to Continue Compensation Hearing
13. Second Order Continuing Compensation Hearing
14. Pre-Compensation Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on March 28, 2018.

| Name | Via Email | Service sent to: |
|------|-----------|------------------|
| Spencer R. Barnes, Esq., Employee's Counsel | X | spence@morrisonandbarnes.com mbwcparalegal@morrisonandbarnes.com |
| Michael L. Mansfield, Esq., Employer's Counsel | X | mmansfield@raineykizer.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**